RICHARD McDONALD, Plaintiff in Error, v. SAMUEL ARNOUT, Defendant in Error.

ERROR TO MASSAC.

The copying of affidavits into the transcript does not make them a part of the record; for this purpose they should be incorporated in a bill of exceptions.

In construing an award, no presumption will be indulged in to overturn it, but every reasonable intendment will be allowed for the purpose of sustaining it.

If an award directs one of two things to be done in the alternative, and one of them is uncertain or impossible, it is incumbent on the party to perform the other of them.

If arbitrators are unable to agree upon an award, and it is stipulated that an umpire shall in that event be chosen by them to settle the difference without their concurrence, his authority to settle the controversy will be undoubted, and if the arbitrators affix their name to the award, it will be considered a verification of the truth of the recitals in it.

THE final judgment upon the award was rendered at the May term, 1843, of the Massac Circuit Court, DENNING, Judge, presiding. At the October term preceding, a motion was made to set aside the award. The recitals in the opinion set forth a full statement of the case.

C. G. SIMONS, for plaintiff in error.

R. S. NELSON, for defendant in error.

TREAT, C. J. On the 2d of June, 1846, McDonald and Arnout entered into a written agreement in these words: " Whereas, divers disputes and controversies have arisen, and are now depending and unsettled between Richard McDonald and Samuel Arnout, both of the county of Massac, and State of Illinois. Now, for the ending and deciding thereof, it is hereby mutually agreed by and between the said parties, that all matters in difference between them shall be referred and submitted to the arbitrament and determination of Minor Long and William H. Read, also of the same county and State; or in the event of their disagreement, they shall have the privilege of calling in an umpire, or third person, so that the said arbitrators do make and publish their award in writing, under their hands and seals, ready to be delivered to the said parties, or such of them as shall desire the same, on or before the 15th of June instant; and it is further agreed by and between the said parties, that this submission to arbitration shall be made a rule of the circuit court in and for the

county of Massac, and State of Illinois." On the same day, the parties mutually executed bonds to abide by and perform the award. The bonds provided that in the event of the disagreement of the arbitrators, the matters in difference should be referred "to the decision of the third person the said arbitrators may call in as umpire." An award was made and published on the 13th of June, 1846. After reciting the terms of the submission, it proceeds to state, that "the said Long and Read, arbitrators as aforesaid, having, pursuant to the said arbitrament bond, by mutual consent elected and called upon Daniel Mussulman, of the said county of Massac, as their umpire in case of their disagreement touching the matters submitted to them as aforesaid; and taking upon themselves the burden of said arbitration, and being first duly sworn faithfully and fairly to hear and examine the matters in difference between the said parties, and to make a true and just award thereon according to the best of their skill and understanding, and having fully examined and duly considered the proofs and allegations of both the said parties, who were duly notified of the time and place at which the said award would be made, and the things submitted to them be settled, and finally thereby adjudged, and they, the said Minor Long and William H. Read, being unable to agree touching the matters in controversy between the said Arnout and McDonnald: Know ye, therefore, that I, the said Daniel Mussulman, indifferently chosen by the said Minor Long and William H. Read, as umpire as aforesaid, being first duly sworn to decide faithfully and impartially in the premises, and having heard and understood the allegations and proofs of both the said parties, and being desirous to set the said parties at unity and good understanding, do, by these presents, arbitrate, order, and decree as follows: First, I do award that all actions, suits, quarrels, and controversies whatsoever, had, moved, arisen, and depending between the said parties in law or equity, for any manner of cause whatever touching the said premises, to the day of the date hereof, shall cease and be no further prosecuted; and each of the parties shall pay and bear his own cost by them incurred in and about this arbitration and award. Secondly, I do further award, order, and decree, that the contract in relation to the saw-mill in the arbitration bonds between the said Arnout and McDonald referred to and mentioned, be cancelled, and be hereafter null and void, to all intents and purposes whatever, and that the parties stand as they were, (with the exceptions hereinafter mentioned,) in the same situation as they were before the said contract was entered into; and that

the liability of either party on the article of agreement or sale bill, (the agreement or sale bill being the same instrument referred to as constituting the contract of purchase of said mill,) shall hereafter lease and determine from the day and date hereof for ever; the said Arnout to be at liberty to take away the boiler, mill-stones, frame, and apparatus to the same belonging, now put up and standing in said saw-mill, whenever he thinks proper so to do, as also such articles of personal property belonging to himself as are in and about said mill. Thirdly, all sums of money paid or payment made by said Arnout to said McDonald, on account of said mill, shall stand good to the said McDonald; and that all debts still due and unpaid to the said McDonald by the said Arnout, and all orders accepted by said Arnout in favor of said McDonald, or for his benefit on account of said mill, and particularly a certain judgment recovered by one Beasley before Esquire Pagett, for the sum of $45, more or less, against said Arnout, shall be paid, taken up, liquidated, and cancelled, by said Richard McDonald within ten days from the date hereof; the said Arnout to have, hold, use, occupy, and possess his town lots and real estate by him contracted to be conveyed to the said McDonald in consideration of his purchase of the one half of the said saw-mill, free from all claim or incumbrance on the part of said McDonald. Fourthly, that the said McDonald shall, on or before the 13th day of November next, pay to the said Arnout the sum of two hundred dollars, and on or before the 13th day of May next, the further sum of two hundred dollars, for his damages sustained in the premises, and work and labor done on the said mill. He, the said McDonald, to give the said Arnout good and sufficient security for the payment of said damages, as well as the sums of money, debts, orders, and judgments, according to the requisition of the third specification of this award; and in the event of said McDonald failing to do so, said Arnout to have a lien upon said saw-mill and engine until he comply with this award. And, lastly, the parties, that is to say, the said Arnout and McDonald, on the payment or securing by McDonald of the said sum of $400 damages as above mentioned, as well as the other sums of money, debts, and judgments thirdly above specified, are to execute to each other general releases which shall take effect upon the 2d day of June inst. In testimony whereof, I have hereunto set my hand and affixed my seal this 13th of June, 1846.

DANIEL MUSSULMAN, [SEAL.]

MINOR LONG,        ) Arbitrators." Umpire.
WILLIAM H. READ, )

On the 18th of September, 1846, Arnout gave McDonald notice, that he would apply for judgment on the award at the ensuing October term of the Massac circuit court. During that term, he filed the agreement of submission, arbitration bond, award, and notice, and moved the court for judgment on the award. The court made the submission a rule of court, and continued the application for judgment. At the October term, 1847, McDonald made a motion to set aside the award, which the court overruled. At the May term, 1848, the court sustained the motion for judgment on the award, and judgment was thereupon entered in favor of Arnout and against McDonald for $400, the aggregate of the sums directed by the award to be paid to Arnout. McDonald sued out a writ of error.

It appears from the record that on the motion to set aside the award, exceptions were taken to the conduct and proceedings of the arbitrators and umpire, and that both parties read affidavits in reference thereto. But no bill of exceptions was tendered to the decision of the court, and consequently the affidavits are not before us. The fact that the clerk has copied the affidavits into the transcript, does not make them a part of the record of the case. They should have been incorporated in a bill of exceptions. This court therefore cannot notice any objections to the award, but what appear on its face in connection with the submission of the parties.

The differences of the parties were submitted to the determination of two arbitrators, and in the event of their disagreement, to the decision of an umpire to be selected by them. The arbitrators were to adjust the controversy, if in their power; and if they could not agree, it was to be referred to the sole decision of the umpire. He was not to act with the arbitrators, but was alone to hear the case, and make an award. His power was not to commence, until that of the arbitrators should be at an end. Such was clearly the design of the parties, as was manifested by the agreement of submission, and the arbitration bond. If they had intended that the arbitrators and the umpire should act together, they would have used very different language. If the arbitrators were unable to agree upon an award after hearing the evidence, and if they selected Mussulman as the umpire, there can be no doubt of his authority to hear the case and settle the controversy. The only evidence of their disagreement, and of his appointment, is contained in the award. It recites the swearing of the arbitrators, their hearing of the proofs and allegations of the parties, their inability to make an award, and their appointment of Mussulman as umpire; and the arbitrators have verified the truth of these

recitals by affixing their names to the award. This is certainly equivalent to their written statement to that effect. It is sufficient to show that Mussulman was appointed umpire, and that a state of case had arisen, which authorized him to take jurisdiction, and award upon the matters submitted. And his award must be sustained, if he has pursued the terms of the submission.

In construing an award, no presumption will be indulged to overturn it; on the contrary, every reasonable intendment will be allowed for the purpose of sustaining it. Merritt v. Merritt, 11 Illinois, 565. The submission was general of all matters in difference between the parties, and so far as it appears from the award, the umpire has fully considered and determined them.

So much of the award as required McDonald to give security for the payment of the money directed to be paid to Arnout, was void for uncertainty. The character of the security should have been specified, so that McDonald could have complied with the requisition by giving it. But this provision may be treated as surplusage, and that part of the award which adjudges the money, and gives a lien on the mill to secure its payment, be held valid. If an award directs one of two things to be done in the alternative, and one of them is uncertain or impossible, it is incumbent on the party to perform the other of them. Simmonds v. Swaine, 1 Taunton, 549; Stawley v. Chappall, 8 Cowen, 235.

Some minor objections were made to the award, but as they are considered wholly untenable, they will not be specially noticed.

The judgment is affirmed.

*Judgment affirmed.*